*By the Court,
Nelson, J.
The defendants were indicted and convicted for neglecting to do an act in which the public are deeply interested, and which it is supposed belonged to them, as a part of their duty, under their charter. By the charter, Laws of 1826, page 192, § 15, they are, among other things, empowered “ to abate or remove any nuisances in any street or wharf, or on the lot or enclosure of any person,” “ to prevent all obstructions, in the river, near or opposite to such wharves, docks or slips.” “ And generally to make all such rules, by-laws, and regulations for the good order and government of the city and tne commerce and trade thereof as they may deem expedient, not repugnant to the constitution and laws of this state.” These provisions are extracted from the law of 1826, but the powers they convey always belonged to the city. 2 R. L. 468, 9. Since 1808 the jurisdiction of the common council of Albany has extended to the middle or main channel of the Hudson river, that being then established as the easterly bounds of the city. In 1823, certain commissioners were authorized to construct a basin in the Hudson river, within the bounds of the city, and opposite to the docks fronting the harbor, extending from the state arsenal to the foot of Hamilton street, for the convenience of the commerce of the city, and the accommodation of the river and canal navigation. The land covered bjr the water of the basin has been conveyed by the state by letters patent to the commissioners. The construction of the basin has been completed at a heavy expense to the proprietors, and meets the most sanguine expectations of its projectors. The 6th section of the act of 1828, page 182, by which the act of 1826, is amended, makes it lawful for the corporation of Albany to order and direct the excavating, deepening or cleansing any part of the basin in front of any pier lot, or any part of the Hudson river, in front of any wharf or pier lot; the expense of which shall be apportioned upon the lots benefited, and remain a lien until paid.
There can be no doubt the corporation have the legal power to remove the cause of the nuisance complained of, if that can be effected by deepening and cleansing the basin ; and, I apprehend, it is impossible to distinguish, in reference to the *subject in question, between their power and their *544 duty. The former constitutes a part of the mass of corporate powers which they have sought for the promotion of the public good; the execution of which is not at their option. They are bound to execute them when demanded by the public interest. The means put within their reach for the purpose are ample, and exclusively under their control. It is well settled that when a corporation or an individual are bound to repair a public highway or navigable river, they are liable to indictment for the neglect of their duty. An indictment and an informotion are the only remedies to which the public can resort for a redress of their grievances in this respect. If an individual has suffered a particular injury, he may recover his loss by an action on the case. 1 Hawk. Pl. Cr. 76, 369. 2 Chitty’s Cr. Law, 333, 352, 3, 603, 4, 5. 3 Burns’ J., 217. 5 Burr. 2700. Cowp. 86. 4 Black. Com. 167. The definition of a nuisance confirms the above principle. A common nuisance, says Hawkins, seems to be an offence against the public, either by doing a thing which tends to the annoyance of all the king’s subjects, or by neglecting to do a thing which the common good requires. 1 Hawk. 360. 4 Black. Com. 166.
The bill of exceptions discloses, I think, that it was practicable, though perhaps at considerable expense, so to deepen and cleanse the basin in question as to remove the cause of the nuisance. The point was not as fully investigated on the trial as it should have been, and I admit is left open to criticism ; yet the scope of the testimony given leads to the conclusion above stated. The bill states that there could be no effectual or permanent relief from the grievance complained of, unless the bulk-head, at the south end of the basin, is cut away; but may not the vigilant attention of the corporation in cleansing the basin answer the same end ? If an object so important as the health and comfort of the population in that part of the city can thus be attained, there is no good reason why this duty, in this respect, should not be rigorously enforced. The whole expense falls upon the owners of the pier lots, to which, no doubt, they would cheerfully submit, rather than risk the ultimate remedy referred to.
It would be a public calamity seriously to impair the existing advantages to *commerce and navigation derived from the use of the basin, and every reasonable effort should be made and required to remove the evil short of so serious a consequence.
The court, I think, erred in instructing the jury that the defendants were bound to abate the nuisance, even if to do so, it was necessary to cut down 'the, bulk-head; and it applied the maxim that the public safety is the paramounf.law. This is, no doubt, the only principle that could countenance or excuse the act required of the corporation, as the basin and its appurtenances were constructed under the authority of a law of the legislature, which they were competent to enact. It is the rule of necessity which supersedes all law, and to be sustained in this instance, if at all, by the overruling principle of self preservation. There is nothing in the charter of the city of Albany making it the duty of the corporation to enforce this maxim, nor are we aware that it is ever enforced by the authority of law, through the medium of the judicial tribunals, or any other legally appointed body of men. The law of the land does not contemplate such an exigency, and, therefore, does not provide for it—if it had, it would no longer be the undefined law of necessity. The duty of the corporation to deepen and cleanse the basin, does not authorize them to cut down the bulk-head; nor is there any other power given by the charter of which we know, or to which we have been referred, that would authorize them to do so. Without authority from this source, they are no more bound to perform the act by a supposed law of necessity for the protection of the public *546 health or comfort than any individual citizen. They have no power but what' is derived from their charter, or special acts of the legislature, relating to the city of Albany.
Judgment reversed.